[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15506

_____

D.C. Docket No. 00-01374-CV-UUB


ARTHUR KNIGHT,

Plaintiff-Appellee,

versus

JACOBSON, Officer,
Badge # 3359, Individual,

Defendant-Appellant.



_____

Appeal from the United States District Court for the
Southern District of Florida
_____
**(August 6, 2002)**

Before CARNES and HILL, Circuit Judges, and DUPLANTIER[*], District Judge.

_____

[*]Honorable Adrian G. Duplantier, U.S. District Judge for the Eastern District
of Louisiana, sitting by designation.

CARNES, Circuit Judge:

This appeal by a law enforcement officer from the denial of qualified immunity presents us with these three issues: 1) whether there was an absence of probable cause for the officer's arrest of the plaintiff; 2) whether non-compliance with state law in making an arrest is itself enough to violate the Fourth Amendment; and 3) whether the restrictions that Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371 (1980), places upon warrantless arrests are violated when an officer arrests a suspect who has stepped outside his home at the officer's command. We answer each of those questions "no."

Miami Police Officer Dennis Jacobson investigated a report from Arthur Knight's ex-girlfriend that Knight, who lived next door to her, had called and threatened to kill her. She recounted to Jacobson that Knight told had told her that not only was he was going to kill her, but that he was going to enjoy killing her and would derive great pleasure from it. Officer Jacobson interviewed the woman; she recounted those facts to him and convinced him that she feared for her life. The woman also told Officer Jacobson about other incidents involving Knight that had caused her to bring criminal charges against him, and she gave Jacobson the case numbers for two of the cases that had resulted from her previous complaints against Knight. She was visibly upset and told Officer Jacobson that she feared for

2

her life. Based on everything he heard and his observations of the woman's demeanor, Officer Jacobson left her apartment, went next door and knocked on Knight's door. He told Knight to step outside, and when he did, Jacobson arrested him on the spot without first obtaining a warrant. The arrest took place at 2:00 a.m. on June 25, 1996.

Knight's arrest did not result in prosecution, but it did result in Knight filing a lawsuit against Jacobson under 42 U.S.C. § 1983 claiming an unconstitutional arrest.[1] Knight contends that Officer Jacobson's arrest of him violated the Fourth Amendment. The district court initially granted Officer Jacobson summary judgment but later took it back in an order issued under Rule 60(b)(3), the procedural details of which are not relevant to the issues that are now before us. Insofar as Officer Jacobson's appeal from the denial of qualified immunity on the unconstitutional arrest claim is concerned – the only appeal before us – the dispositive issues are the three we stated in the opening paragraph of this opinion.

An officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was arguable probable cause for the arrest, which is

---

[1]Knight says that the arrest involved in this case is just one of four warrantless arrests that represent a pattern of harassment by the City of Miami, Jacobson, and another defendant in this lawsuit. We are concerned only with the arrest that occurred on June 25, 1996, and with the issues arising from it as they relate to Officer Jacobson, the only defendant before us in this appeal.

a more lenient standard than probable cause.  See Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."); Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").  The difference in the two standards is immaterial in this case because Officer Jacobson had probable cause to arrest Knight.

Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975) (internal quotation marks, citation, and brackets omitted). A prudent man in Officer Jacobson's place would have been warranted in believing that Knight had committed the crime of misdemeanor assault.  Florida law defines misdemeanor assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and in doing some act

which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. Ann. § 784.011 [2]

By the time he finished talking with Knight's ex-girlfriend, Officer Jacobson had heard enough to warrant a prudent person to believe that Knight had intentionally threatened to do violence to her and that Knight, who lived next door to her, had an apparent ability to carry out the threat, and in making it had created a well-founded fear in her that violence was imminent. Knight was never convicted or even prosecuted for that crime or any other stemming from the arrest, but that does not matter. See Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released."); Von Stein v. Brescher, 904 F.2d 572, 578 n.9 (11th Cir. 1990) ("'Probable cause' defines a radically different standard than

_____

[2]Knight contends that he was arrested for misdemeanor assault, while Officer Jacobson says the arrest was for the crime of domestic violence. We need not resolve that dispute, because Jacobson prevails even under Knight's theory, and it is irrelevant which crime he thought he was arresting Knight for at the time. See Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir.) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." (internal marks omitted) (quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973))) reh'g and reh'g en banc denied, __ F.3d __ (11th Cir. May 13, 2002) (No. 00-16054).

5

'beyond a reasonable doubt,' and while an arrest must stand on more than suspicion, the arresting officer need not have in hand evidence sufficient to obtain a conviction."); United States v. Pantoja-Soto, 739 F.2d 1520, 1524 n.7 (11th Cir. 1984) (same).  When Knight was arrested in the early morning hours of July 25, 1996, there was probable cause to believe he had committed the crime of misdemeanor assault.

Knight's principal argument to the contrary maintains that under Florida law an assault cannot occur if the threat is made over the telephone.  For that proposition he relies on Trowell v. Meads, 618 So. 2d 351 (Fla.  1ˢᵗ DCA 1993), which is readily distinguishable.  In Trowell the plaintiff sought a permanent restraining order against her former husband, contending that he had assaulted her by making threats during a telephone conversation while he was involuntarily confined in a Florida state mental  hospital.  Id. at 351.  In a two-paragraph opinion, the district court of appeals concluded that under those facts there had been no assault. Id. at 351-52. The facts in this case are different.  Unlike the former husband in Trowell, Knight was not involuntarily confined and therefore without any apparent ability to inflict violence and create a well-founded fear that the threatened violence was imminent.  Instead, Knight was free and unconfined

and conveniently located right next door to the target of his threat. Knight's contention that Officer Jacobson had no probable cause to arrest him is unfounded.

Knight also contends that his arrest, even if supported by probable cause, violated the Fourth Amendment because it was not done in accord with state law. With an exception or two not relevant here, Florida law authorizes warrantless arrests for misdemeanors only if they are committed in the officer's presence. Fla. Stat. Ann. § 901.15(1). The misdemeanor assault in this case was not. From those two premises Knight concludes that his arrest violated the Fourth Amendment. However, there is another premise essential to that conclusion which is not correct, and it is the proposition that an arrest supported by probable cause in circumstances where arrest is not permitted under state law violates the Fourth Amendment.

Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right. See Paul v. Davis, 424 U.S. 693, 698-99, 96 S. Ct. 1155, 1159 (1976). There is no federal right not to be arrested in violation of state law. See Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that federal law, not state law, determines the validity of arrests under the Fourth Amendment); Fields v. City of South Houston, 922 F.2d at 1183, 1189 (5th Cir. 1991) (same); Barry v. Fowler, 902 F.2d

7

at 770, 772 (9th Cir. 1990) (same); <u>McKinney v. George</u>, 726 F.2d 1183, 1188 (7th Cir. 1984) (same); <u>Street v. Surdyka</u>, 492 F.2d 368, 370-73 (4th Cir. 1974) (same). While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983. <u>See</u> <u>Barry</u>, 902 F.2d at 773 ("While Barry may have a remedy under state law [for the warrantless arrest], she has failed to allege a federal constitutional or federal statutory violation"); <u>Diamond v. Maryland</u>, 395 F.Supp. 432, 439 (S.D. Ga. 1975) ("Even if a police officer violates a state arrest statute, he would not be liable under [§ 1983] unless he also violated federal constitutional law governing warrantless arrests."); <u>see</u> <u>also</u> <u>Paul v. Davis</u>, 424 U.S. at 699, 96 S.Ct. at 1159 (rejecting the argument that "every legally cognizable injury which may have been inflicted by a state official acting 'under color of law' establish[es] a violation of the Fourteenth Amendment"); <u>Lovins v. Lee</u>, 53 F.3d 1208, 1210 - 1211 (11th Cir. 1995) (holding that while the plaintiff may have a claim under state law against defendants because they acted contrary to state law in releasing an inmate who harmed her, that violation of state law did not give her a federal constitutional claim).

The only authority Knight cites in support of his contention that violation of state law governing arrests automatically contravenes the Fourth Amendment is a Supreme Court case that applied state arrest law to determine the validity of an

8

arrest for a federal offense when there was no federal statute governing the situation. See Johnson v. United States, 333 U.S. 10, 15 n.5, 68 S. Ct. 367, 370 (1948); see also United States v. Di Re, 332 U.S. 581, 589, 68 S. Ct. 222, 226 (1948). Borrowing state arrest procedure standards in those circumstances is a different matter from holding that those state law standards define constitutional minimums. As the Fourth Circuit concluded: "The use of state law in such cases seems clearly to be based on non-constitutional considerations." Street, 492 F.2d at 372 n.7. See also 3 Wayne R. La Fave, Search and Seizure § 5.1(b), at 22 (3d ed. 1996)(same). We reject the notion that the Florida law procedures governing warrantless arrests are written into the federal Constitution.[3]

---

[3]About warrantless arrests for misdemeanors, we decide only the issue framed by Knight's argument, which is that violation of a state law restriction on such arrests violates the Fourth Amendment because state law has been contravened. Knight has not argued, and so we do not decide, whether an arrest for a misdemeanor not committed in the officer's presence violates the Fourth Amendment itself irrespective of state law. We note in passing, however, that every circuit that has addressed the issue has held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests. See Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995) ("Pyles' rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."); Fields v. City of South Houston, 922 F.2d at 1183, 1189 (5th Cir. 1991) ("The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer."); Barry v. Fowler, 902 F.2d at 770, 772 (9th Cir. 1990) ("The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth

Knight's final contention is that his arrest violated the Fourth Amendment as explicated in Payton v. New York, 445 U.S. 578, 590, 100 S. Ct. 1371, 1382 (1980), which held that a warrantless arrest inside the home of a suspect is presumptively unreasonable unless exigent circumstances justify the intrusion. This part of Knight's case founders on the facts, because Knight was not arrested inside his home, but just outside the door of it after he stepped out as instructed by Officer Jacobson.

The rule of Payton is that there is "a firm line at the entrance to the house," and absent exigent circumstances "that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590, 100 S. Ct. at 1382. Officer Jacobson never crossed that threshold or went over the line at the entrance to the house. As Knight himself testified in deposition: "There was a knock on my door, I came to the door, and Officer Jacobson said, 'What are you doing?' I said, "I am in here, can I help you?' He told me to step outside; I stepped outside; he walked around

Amendment."); Street, 492 F.2d at 372 ("We do not think the Fourth Amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence.").

10

me a full circle and he told me to put my hands on the car...And then he handcuffed me. And then he put me in the car."[4]

Payton keeps the officer's body outside the threshold, not his voice. It does not prevent a law enforcement officer from telling a suspect to step outside his home and then arresting him without a warrant. In that situation, the officer never crosses "the firm line at the entrance to the house" which is where Payton drew the line. See United States v. Berkowitz, 927 F.2d 1376, 1386 (7th Cir. 1991) (Payton prohibits only a warrantless entry into the home, not a policeman's use of his voice to convey a message of arrest from outside the home." (emphasis in original)). See also McKinney v. George, 726 F.2d 1183, 1188 (7th Cir. 1984) (arrest of suspect who opened the door in response to officers' knocks and who was arrested outside his home is reasonable and not contrary to Payton); United States v. Carrion, 809 F.2d 1120, 1128 (5th Cir. 1987) (arrest of suspect in

---

[4] Knight did say that Officer Jacobson eventually went inside the apartment, but he made clear that happened after the arrest had been made and was done for the purpose of retrieving Knight's identification. Knight testified: "Then Jacobson — the other one, his partner stayed in there [at his ex-girlfriend's apartment] and then because he was asking me do I have ID and I told him my ID was inside on my dresser. He went in, he got my ID. Or my driver's license." At oral argument, Knight again conceded that no officer stepped inside the home until after he had been arrested. Knight has not argued that Officer Jacobson's entry into the apartment after the arrest had been made and for the purpose of retrieving Knight's identification violated the Payton rule.

11

doorway of home is reasonable and not contrary to <u>Payton</u>); <u>United States v. Whitten</u>, 706 F.2d 1000, 1015 (9th Cir. 1983) (doorway is a public place not subject to <u>Payton</u> restriction); <u>United States v. Botero</u>, 589 F.2d 430, 432 (9th Cir. 1978) (arrest of suspect in doorway after the suspect answers the door is reasonable). <u>See</u> <u>generally</u> 3 Wayne R. La Fave, Search and Seizure § 6.1(e), at 254-263 (3d ed. 1996).[5]

The order of the district court denying Officer Jacobson's motion for summary judgment based on qualified immunity is REVERSED, and the case is REMANDED with directions that summary judgment be entered for him on that basis.

---

[5] Some courts have held that when the suspect leaves his home because of coercive tactics by the police, the arrest is illegal. <u>See, e.g.,</u> <u>United States v. Morgan</u>, 743 F.2d 1158, 1166-67 (6th Cir. 1984) (holding that a warrantless arrest made after the suspect stepped outside the home was unconstitutional because of the coercive tactics used by the police, which included having nine officers surround the home, flooding the home with spotlights, and summoning the suspect through a bullhorn.). There were no such tactics in this case, just a simple direction by one officer that Knight step outside.