Ernest HEFLIN, Plaintiff,

v.

MIAMI–DADE COUNTY,
et al., Defendants.

Case No. 09–CV–21188.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 1, 2011.

Jeffrey Alan Norkin, Jeffrey A. Norkin, Sunrise, FL, for Plaintiff.

Bernard Pastor, Miami–Dade County Attorney's Office, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

**THIS CAUSE** comes before the Court upon Defendants' Motion for Summary Judgment (DE # 52). The Court is fully briefed in the matter and proceeds with the benefit of oral argument.[1] The above-styled case is a 42 U.S.C. § 1983 claim based upon use of excessive force, failure to intervene, and false arrest during an incident that occurred in Plaintiff's home on May 2, 2005. After completing significant discovery relating to those claims, Defendants (collectively, "Officers") now argue that summary judgment is appropriate for the following reasons: i) Officers Pares and Correa are entitled to qualified immunity in connection with the arrest of Plaintiff for obstruction of justice; ii) the alleged force used by the Officers in effectuating the arrest was *de minimis* and likewise entitles Officers Pares and Correa to qualified immunity; and iii) Officer Silva did not arrive on the scene until after Plaintiff was arrested and in custody outside his home and thus is entitled to qualified immunity since he could not have used any excessive force against Plaintiff or failed to intervene on his behalf. During the Final Pretrial Conference, held on September 2, 2011, the Court heard arguments on Defendants' pending Motion for Summary Judgment, required the parties to file copies of the deposition transcripts, and took the Motion under advisement. After careful consideration of the evidence on record and for the reasons detailed below, the Court finds summary judgment should be granted in favor of the Defendants.

### I. Factual Allegations [2]

The following facts are not in dispute. On May 2, 2005, Plaintiff walked into his home as an argument erupted at Plaintiff's residence between Aisha Blackwood, a friend of Plaintiff s, and her mother, Sandra. Ernest Heflin Dep., DE # 53–1, at 83:14–20. In addition to Plaintiff and the Blackwoods, six others were present in the house during the argument: Loretta Heflin, Monique Heflin, Janine Lane, Helen Riddle, and Aisha Blackwood's two minor children. Ernest Heflin Dep. at 175:4–18. Aisha's two minor children were in a bedroom with the door closed during the argu-

---

1. Plaintiff filed a Response on July 1, 2011 (DE # 56). Defendants filed a Reply on July 10, 2011 (DE # 61). This matter is therefore ripe for determination. Additionally, Oral Argument was held on this matter on September 2, 2011.

2. Plaintiff brought his claim against Officer Silva, Officer Pares, and Officer Correa (collectively, "Officers"). By including Officer

Silva in the following analysis, the Court is not making a finding that Officer Silva was present at any time material to Plaintiff's claims. The Court notes that there is substantial evidence that Officer Silva was not present in Plaintiff's home. The Court will, however, assume Officer Silva was present for the purpose of resolving Defendants' Motion for Summary Judgment based on Plaintiff's allegations.

ment. Aisha Blackwood Dep., DE # 53–3, at 56:20–22.

Aisha and Sandra were using vulgar language while yelling and screaming at each other. Ernest Heflin Dep. at 189:10–21; Loretta Heflin Dep., DE # 53–4, at 41:1–14. The argument then escalated, and the women began physically fighting each other. Aisha Blackwood Dep. at 55–60. At some point, Aisha Blackwood called 911 for police assistance, stating that her child was being kidnapped. Ernest Heflin Dep. at 176:19–25; 177:1–2; Aisha Blackwood Dep. at 66–68; Monique Heflin Dep., DE # 53–6, at 47:1–4.

The police dispatcher ordered all police cars to respond to a "234" signal, implicating a dispute in progress with the potential for violence and escalation. Correa Deck, DE # 53–7, at ¶ 6. Officer Correa was the primary responder to the call, while Officer Pares was the backup officer. Correa Decl. ¶ 7; Pares Decl., DE # 53–8, at ¶ 7. Both Officers responded to the "234" signal by driving in separate cars with their lights and sirens on, arriving at Plaintiff's house simultaneously. Correa Decl. H6–7; Pares Decl. ¶ 6–7. Both Officers approached the front door of Plaintiff's residence and found the door was locked. Correa Decl. ¶ 9; Pares Decl. ¶ 9. The Officers heard yelling and screaming from individuals inside the house and proceeded enter the house through an unlocked side door. Correa Decl. ¶ 9; Pares Decl.¶ 9. Plaintiff testified he did not hear the Officers knock on the side door. Ernest Heflin Dep. at 191:4–12.

When the Officers entered the house, everyone was arguing. Monique Heflin Dep. at 40:9. Aisha and Sandra were still screaming and yelling at each other. Ernest Heflin Dep. at 193:20–25. Monique and Plaintiff were screaming, yelling, using profanity and arguing with one another about Plaintiff's handling of the ongoing situation. Monique Heflin Dep. at 42:9–25; 43:1–8. Plaintiff had his hand on Monique's arm while they were arguing. *Id.* at 48:16–17. Once Plaintiff saw the Officers enter his house, he confronted them with an angry tone, saying "What the hell are you doing here?" Ernest Heflin Dep. at 194:21–24. Plaintiff was angry at the Officers for entering his house. *Id.* at 195:14–16.

At this point, the situation becomes even more chaotic. Conflicting accounts emerge in the depositions on the number of officers inside the house.[3] Plaintiff states that he did not respond to the Officers' instructions to be quiet, instead turning his back to them and walking towards his room. *Id.* at 201:25, 202:1–10. Plaintiff, who stands over six feet tall, testifies that one of the Officers grabbed him by the shoulder, another by his waist, and the third by his side to subdue him. *Id.* at 163:11, 206:11–17. As the Officers attempted to handcuff Plaintiff, Plaintiff resisted them by trying to pull away. Monique Heflin Dep. at 104:8–17.

After he was in handcuffs, Plaintiff alleges he was pushed down, falling on his behind. Ernest Heflin Dep. at 213:2–4. The Officers then picked Plaintiff up and walked him to the side door of the house. *Id.* at 215:12–13. According to Plaintiff, as he was exiting the side door, the Officers pushed him again, causing him to hit his

---

**3.** Evidence on the record shows that the third police officer, Officer Silva, arrived at Plaintiff's residence approximately twenty-three minutes after the original 911 call was dispatched. Silva Decl. ¶¶ 7–8; Pares Decl. ¶ 27; Correa Decl. ¶ 27. When Officer Silva arrived, Plaintiff was already in custody, ar-rested, and handcuffed. *Id.* Plaintiff stated three officers were in his house at the time of the events giving rise to his claim. Ernest Heflin Dep. at 191:16–20. Loretta Heflin testified that six or eight officers were inside the house. Loretta Heflin Dep. at 52:2–7.

hip on the door jamb. *Id.* at 215:19–25. Plaintiff alleges that the Officers beat him, but when asked to describe what that meant, he replied, "I consider what they did to me physically like shoving me around and jerking my arms back and forth, that's a beating, whether he hit me with his hand or not." *Id.* at 284:18–21. When speaking of specific actions taken by the Officers, Plaintiff describes being pushed and being dragged. *Id.* at 282:20–25; 283:1–5; 290:7–8.

Once outside, the Officers put Plaintiff in the patrol car. *Id.* at 216:19–20. At this point, Plaintiff complained of chest pains and a minor scratch in his hand area, so Officer Pares called Miami–Dade Fire Rescue to treat him. Pares Decl. ¶ 21. Plaintiff was taken to Jackson South Hospital, where he refused treatment. Ernest Heflin Dep. at 100:5–7. Officer Correa remained at Plaintiff's home to investigate the child kidnapping allegations. Correa Decl. ¶ 28.

## II. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under the governing law. *Id.* If the record as a whole could not lead a rational factfinder to find for the

nonmoving party, there is no genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

## III. Discussion

As noted above, the present action is a 42 U.S.C. § 1983 claim based upon use of excessive force, failure to intervene, and false arrest during an incident that occurred in Plaintiff's home. The Officers moved for summary judgment on qualified immunity grounds. Plaintiff contends that there remain disputed issues of material facts over his claims. A review of the record evidence, however, shows that the Officers acted reasonably in response to an emergency call. Thus, the Officers are entitled to qualified immunity.

 This Court must analyze the Defendants' qualified immunity defense under a two-part framework.[4] For an officer

---

4. The antecedent question for qualified immunity is whether the officer was "acting within the scope of his discretionary authority when

the allegedly wrongful acts occurred." *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1254 (11th Cir.2010) (citations omitted). Here, it

to lose qualified immunity, both elements of the two-part framework must be satisfied. *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1254 (11th Cir.2010); *see also Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009); *Brown v. City of Huntsville,* 608 F.3d 724, 734 (11th Cir.2010). One inquiry is whether the plaintiff's allegations, and the evidence viewed in his favor, establish a constitutional violation. *Grider,* 618 F.3d at 1254; *see also Saucier v. Katz,* 533 U.S. 194, 200–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Fils v. City of Aventura,* 647 F.3d 1272, 1287 (11th Cir.2011). Second, that constitutional right must be "clearly established," such that a reasonable officer should have known that his conduct violated the plaintiff's constitutional rights. *Grider,* 618 F.3d at 1254 (*citing Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). "These two steps do not have to be analyzed sequentially; if the law was not clearly established, we need not decide if the Defendants actually violated the Plaintiffs' rights, although we are permitted to do so." *Id., see also Oliver v. Fiorino,* 586 F.3d 898, 905 (11th Cir.2009) (*citing Pearson v. Callahan,* 129 S.Ct. at 818). We first address whether Plaintiff has established a constitutional violation.

### a. Excessive Force (Count I)

■ An officer's use of force is excessive under the Fourth Amendment if the use of force was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Fils v. Aventura,* 647 F.3d 1272, 1287 (*citing Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The reasonableness of an officer's act "must be judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. This standard allows for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1865.

■ At summary judgment, the Court cannot simply accept the officer's subjective version of events, but rather must reconstruct the events in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances. *Fils,* 647 F.3d at 1288; *see also Vinyard v. Wilson,* 311 F.3d 1340, 1347–48 (11th Cir.2002) (evaluating, at summary judgment, the allegedly excessive force under the facts as described by the plaintiff, notwithstanding the defendant-officer's different version of events). Officers may use force that is "necessary in the situation at hand." *Fils,* 647 F.3d at 1288 (*citing Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir.2002)).

■ In assessing whether the force used was necessary, courts take into account three factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865; *see also Brown,* 608 F.3d at 738 (*quoting Vinyard,* 311 F.3d at 1347). Furthermore, "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably propor-

is undisputed that the Officers were acting within the scope of their discretionary author-

ity.

tionate to the need for that force." *Lee*, 284 F.3d at 1198.

■■■ The facts relevant to Plaintiff's claim, viewed in the light most favorable to him, indicate that the force used by the Officers was not excessive. Measuring these undisputed facts against the three factors from *Graham, supra,* supports this conclusion.

### (i) The crime at issue was sufficiently severe.

It is undisputed that upon entering Plaintiff's home, the Officers encountered a chaotic scene. The Officers were responding to a potentially violent emergency. Due to the actions of Plaintiff, the Officers were unable to investigate the child kidnapping situation. While obstruction of justice may not be a severe crime, Plaintiff's actions prevented the Officers from investigating a much more severe crime.

### (ii) Plaintiff posed an immediate threat to the safety of the Officers and others.

Plaintiff, by his own admission, was angry at the Officers for entering his house and confronted them with profanity upon their arrival. Ernest Heflin Dep. at 194:21–24; 195:14–16. Plaintiff also had his hand on Monique Heflin as the two were arguing and yelling at each other. Monique Heflin Dep. at 47:14–17. Monique Heflin testified that she thought the Officers perceived Plaintiff harassing her. *Id.* at 48:19–22. The Court finds it was reasonable under those circumstances for the Officers to make a quick judgment that Plaintiff was a threat to their safety or the safety of others.

### (iii) Plaintiff actively resisted arrest.

Plaintiff admits that he turned his back on the Officers in response to their commands. *Id.* at 201:25, 202:1–10. Another witness testified that Plaintiff was resistant to arrest and did not cooperate with the Officers as they attempted to handcuff him. Monique Heflin Dep. at 104:8–17.

### (iv) The force allegedly used was reasonably proportionate to the need for that force.

The Officers allegedly used force to arrest Plaintiff for obstruction of justice. Plaintiff testifies that he was pushed twice. Ernest Heflin Dep. at 215:12–24. Plaintiff alleges in the Amended Complaint that he was beaten, but concedes in his deposition that the conduct of the Officers was just "rough handling." *Id.* at 284:18–23. The undisputed facts show that Plaintiff received a minor scratch on his hand area. Pares Decl. ¶ 21. Thus, the Court finds that the amount of force used by the Officers was *de minimis.*

### b. False Arrest (Count III)

Plaintiff alleges that the Defendants had no probable cause to enter his house and no probable cause to arrest him. Defendants now move for summary judgment on the false arrest claim, arguing that probable cause existed for Officers to enter Plaintiff's home and effectuate his arrest. (DE # 52, at 14). In response, Plaintiff contends that the home invasion "was irrefutably illegal and thus the arrest which followed it was a false arrest." (DE # 56, at 4–5). Plaintiff also argues, "Because the arrest occurred in Mr. Heflin's home, it was illegal *per se.*" Plaintiff relies upon *Bashir,* in which the Eleventh Circuit found, "A warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant." *Bashir v. Rockdale County, Ga.,* 445 F.3d 1323, 1328 (11th Cir.2006).

■■■ The exigent circumstances exception to the warrant requirement recognizes a "warrantless entry by criminal law

enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir.2002) (*quoting Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). Here, the Court finds that exigent circumstances permitted the Officers to enter Plaintiff's home and arrest him without a warrant.[5]

It is uncontested that the Officers did not have a warrant and entered the home through an unlocked side door. It is also undisputed that the Officers were responding to a child kidnapping situation—a potentially violent emergency. Upon arrival, the Officers heard loud yelling and screaming coming from inside the house. (DE # 53, at ¶ 15). When no one responded to the Officers' knocks at the door, it was reasonable that the Officers would need to find another way to enter the house. The possibility of a violent situation inside was a situation in which exigent circumstances existed. Thus, the entry into the home was justified.

 The Court next turns to the issue of whether the Officers had arguable probable cause to arrest Plaintiff.[6] An officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was arguable probable cause for the arrest, which is a more lenient standard than probable cause. *Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir.2002); *see Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir.1999) ("Ar-

guable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir.1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").

Here, Plaintiff was arrested for obstruction of justice in violation of Section 21.26 of the Code of Metropolitan Dade County, which provides in relevant part: "It shall be unlawful for any person to knowingly resist or obstruct the performance by one, who the person knows or has reason to believe is a police officer or firefighter, of any authorized act within such officer's official capacity." (DE # 53, at ¶¶ 39–40). It is undisputed that Plaintiff was angry at the Officers for entering his house, questioned their right to be in his house, and refused to follow their orders to calm down. The Officers were prevented from investigating the child kidnapping situation because of the actions of Plaintiff. A prudent man in Plaintiff's home would have been warranted in believing that Plaintiff was resisting the Officers and obstructing their performance. Thus, the Officers had arguable probable cause to arrest Plaintiff.

### c. Failure to Intervene (Count II)

Finally, Defendants argue that because no Officer violated Plaintiff's right to be

---

**5.** Plaintiff was arrested for obstruction of justice in violation of Section 21.26 of the Code of Metropolitan Dade County. (DE # 53, at ¶ 39).

**6.** Defendants also satisfy the higher standard of probable cause. Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420

U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (internal quotation marks, citation, and brackets omitted). The difference in the two standards is immaterial in this case because the Officers had probable cause to arrest Plaintiff. *See Knight*, 300 F.3d at 1274 (finding that a prudent man in Officer Jacobson's place would have been warranted in believing that Knight had committed the crime of misdemeanor assault).

free from excessive force or falsely arrested him, none of them had an attendant obligation to intervene. (DE # 52, at 15). In response, Plaintiff makes the baseless assertion that "it is irrefutable that the MDPD destroyed all record of what occurred in the Heflin home in the subject incident." (DE # 56, at 8). Plaintiff provides no evidence of this assertion that anyone destroyed information relating to this case and offers no evidence as to how Officers could be held liable for a failure to intervene.

 A police officer has a duty to intervene when another officer uses excessive force. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir.1993); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441–42 (11th Cir.1985). As discussed in the preceding paragraphs, the actions taken by the Officers were objectively reasonable in the circumstances. The undisputed evidence shows that no officer used excessive force or falsely arrested Plaintiff. Thus, the Court finds that no officer can be held liable for a failure to intervene.

## IV. Conclusion

Taken in a light most favorable to Plaintiff, the facts nevertheless show that the Officers acted appropriately in accordance with their official duties. Responding to a potentially violent situation, the Officers entered a chaotic scene and took reasonable steps to restore order. As no constitutional violation occurred, the Officers are entitled to qualified immunity.

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendants' Motion for Summary Judgment (**DE** # 52) be, and the same is, hereby **GRANTED.**

2. The above-styled action is **DISMISSED WITH PREJUDICE.**

Jurisdiction is reserved for a determination of fees and costs.

3. All pending motions are **DENIED AS MOOT.**

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED.**