[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12418
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00303-MW-CAS


CORNELIUS MARTIN, II,

Plaintiff-Appellant,

versus

MICHAEL WOOD,
in his official capacity as sheriff of Leon County Florida

Defendant-Appellee,

LARRY CAMPBELL, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 22, 2016)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Cornelius Martin, II, proceeding *pro se*, appeals following the district court's order dismissing for failure to state a claim his civil complaint—filed pursuant to 42 U.S.C. § 1983 and Florida's Adult Protective Services Act ("APSA"), Fla. Stat. §§ 415.101-415.113—against Michael Wood in his official capacity as sheriff of Leon County, Florida. After careful consideration, we affirm the district court.

## I.    BACKGROUND[1]

The circumstances giving rise to Martin's lawsuit began when his sister, Rebecca Keaton, called the Leon County Sheriff's Department (the "Department") to complain that Martin had mismanaged funds belonging to their mother, Mary Martin, an 89-year-old Florida resident and settlor of the Martin Revocable Living Trust (the "Trust"). Mary Martin suffered from dementia. Keaton spoke with Deputy Monroe,[2] who later assigned Detective Benjamin Benedict to investigate the allegations. Neither Monroe nor Benedict ever reported the alleged exploitation to the Florida Department of Children and Families ("DCF") as required by the APSA, Fla. Stat. §§ 415.111(1), 415.1034(1)(a)(5).[3]

---

[1] At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to Martin. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

[2] The record does not reveal Deputy Monroe's first name.

[3] The APSA "was enacted to protect vulnerable adults from abuse, neglect, and exploitation by caregivers . . . . It provides for protective services, including protective

2

Some months later, Benedict applied for a warrant to arrest Martin based solely on Keaton's allegations.[4]  Before submitting his application, Benedict never examined the Trust's records.  Upon issuance of the warrant, sheriff officers from Chatham County, Georgia arrested Martin in Savannah, Georgia.  Martin spent nearly four months in jail in Georgia following his arrest.  He was then extradited to Florida, where he was detained for another four months.  After being released, the terms of his bond prevented him from returning to his residence in Georgia.  A Florida state court ultimately dismissed all charges against Martin.

Martin filed a lawsuit in district court against the Department and the then-Sheriff of Leon County, Larry Campbell, in his official and individual capacities. The Department and Campbell moved to dismiss, arguing, among other things, that the Department was not a proper party.  A magistrate judge denied the motion to

supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent." *Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct. App. 2008) (internal quotation marks omitted).  The APSA requires law enforcement officers who know or have reasonable cause to suspect such abuse to notify a central abuse hotline. Fla. Stat. § 415.1034(1)(a)(5).  Upon receiving a report alleging abuse of a vulnerable adult, DCF investigators begin a protective investigation to determine whether the victim is a vulnerable adult; whether there is an indication that the vulnerable adult has been abused, neglected, or exploited; the extent of any injuries and evidence thereof; the persons responsible; and what protective services may be necessary to ensure the victim's well-being. *Id*. § 415.104(3).

[4] In his complaint, Martin alleges that Benedict applied for the warrant based "solely" on Keaton's allegations.  Am. Compl. at ¶ 18 (Doc. 14) ("Doc." refers to the docket entry in the district court record in this case).  In his brief, Martin admits that Benedict also interviewed Mary Martin before applying for a warrant.  *See* Appellant Br. at 10.  Regardless of whether Benedict interviewed Mary Martin before applying for a warrant or, instead, relied solely on Keaton's allegations, our analysis remains the same.

dismiss as moot after granting Martin leave to file an amended complaint that named Campbell, in his individual and official capacities, as the sole defendant.

The amended complaint advanced several claims under 42 U.S.C. § 1983 arising from a panoply of alleged constitutional violations including, but not limited to: (1) fostering a custom or practice of conducting investigations over which the Department lacked jurisdiction, (2) false arrest, (3) malicious prosecution, and (4) negligent training regarding the mandatory reporting requirements of the APSA. Martin's complaint further alleged that Campbell violated Martin's rights under the United States and Florida Constitutions by infringing on his right to privacy and his right to establish and maintain economic relationships. It also alleged that Campbell's violation of the APSA entitled Martin to monetary relief.

Campbell filed a motion to dismiss the amended complaint. While the motion was pending, Campbell passed away and his successor, Michael Wood, filed a notice of substitution stating that he should be substituted into the lawsuit in his official capacity as Sheriff of Leon County. Wood also requested dismissal of any claims against Campbell in his individual capacity. Martin indicated that he did not oppose the substitution or removing the claims against Campbell in his individual capacity. The magistrate judge ordered Martin to respond to the request to dismiss claims against Campbell in his individual capacity. When Martin failed

to respond, the magistrate judge permitted the substitution and dismissed Martin's claims against Campbell in his individual capacity.

The magistrate judge then issued a Report and Recommendation ("R&R"), recommending that the district court dismiss Martin's amended complaint in its entirety for failure to state a claim upon which relief could be granted. Martin filed an objection to the R&R. The district court adopted the R&R over Martin's objections and dismissed Martin's amended complaint. This is Martin's appeal.

## II.    ANALYSIS

We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999). In so doing, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007). "In order for the plaintiff to satisfy his obligation to provide the grounds of his entitlement to relief, he must allege more than labels and conclusions; his complaint must include factual allegations adequate to raise a right to relief above the speculative level." *Id.* (alterations and internal quotation marks omitted).

Martin's complaint raised a number of different claims, which we can divide broadly into two categories. First, Martin asserted that because Sheriff Wood violated his constitutional rights, he was entitled to relief under 42 U.S.C. § 1983.

5

Second, he alleged that because Sheriff Wood violated the APSA, Fla. Stat. §§ 415.1034(1)(a)(5), 415.111, 415.1111, he was entitled to civil relief as a result. We address each category of claim in turn.

## A. Section 1983 Claims

Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983. Where, as here, an officer is sued under § 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent."[5]  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Such a suit is, in actuality, a suit "directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  As a result, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee," because "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405, 415 (1997).

Notably, the mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to infer municipal

[5] We consider only Martin's claims against Wood in his official capacity.  Although he originally sued Campbell in his individual capacity as well, Martin neither opposed the dismissal of those claims in the district court nor appealed the district court order dismissing them.  On appeal, Martin cites a number of cases concerning qualified immunity.  But these cases have no bearing on Martin's appeal.  *See Tapley v. Collins*, 211 F.3d 1210, 1211 n.2 (11th Cir. 2000).

culpability and causation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* In order "to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* at 1290 (internal quotation marks omitted). This prevents the imposition of "liability on a municipality without proof that a specific policy caused a particular violation [which] would equate to subjecting the municipality to respondeat superior liability—a result never intended by section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998).

Demonstrating the existence of a custom or policy is not the only way a plaintiff can establish municipal liability. A municipality may also be liable under § 1983 when its employees cause a constitutional injury as a result of the municipality's failure to adequately train or supervise its employees.[6] *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011). But, as with a municipality's customs or policies, "the inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train

---

[6] In his complaint, Martin pleads negligent training as a separate cause of action. purposes of this opinion, we consider this claim together with Martin's other § 1983 claims against Leon County.

amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To make such a showing, "a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area." *Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 637 F.3d at 1189. "[I]t must have been obvious that the municipality's failure to train or supervise its employees would result in a constitutional violation" and that "the city made a deliberate choice not to train its employees." *Id.* (internal quotation marks omitted).

Construing Martin's briefs liberally, as we must on account of his *pro se* status, *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008), he contends that he suffered two distinct deprivations of his constitutional rights as a result of a municipal custom, policy, or failure to train.[7] First, he argues that he was falsely arrested and maliciously prosecuted when sheriff officers arrested him without probable cause. Second, he argues that Leon County sheriff officers had no authority under Florida law to investigate him for the crime of elder abuse.

1. False Arrest and Malicious Prosecution[8]

---

[7] To the extent Martin alleges any other constitutional violation, such as improper denial of a bond hearing, he has not briefed the issue on appeal and thus has abandoned it. *Timson*, 518 F.3d at 874.

[8] We note that we are not entirely convinced that Martin can raise a false arrest claim because officers arrested him pursuant to a valid warrant. *See Whiting v. Traylor*, 85 F.3d 581,

An arrest lacking probable cause violates the Fourth Amendment and can underpin a § 1983 claim. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). The existence of probable cause at the time of arrest, however, serves as an absolute bar to any subsequent constitutional challenge to the arrest. *Id*.

Malicious prosecution is also a violation of the Fourth Amendment and similarly constitutes a claim under § 1983. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). To state a federal malicious prosecution claim, a plaintiff "must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Id.* A plaintiff must establish six elements to support a claim of malicious prosecution under Florida law:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

Martin has failed to plead the elements of a false arrest or malicious prosecution claim. As an initial matter, Martin's amended complaint alleged that

---

585 (11th Cir. 1996) (citing *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3-4 (1st Cir. 1995)). Regardless, we need not reach that issue because Martin's false arrest claim fails for the same reasons his malicious prosecution claim fails.

sheriff officers from Chatham County, Georgia arrested him.  Because the Sheriff of Leon County, Florida was not responsible for actions taken by law enforcement officers in Georgia, Martin has failed to allege the required causal link between Leon County and any alleged constitutional deprivation stemming from his arrest. *See McDowell*, 392 F.3d at 1289.

Moreover, Martin's complaint contained no factual allegations indicating that his purported false arrest or malicious prosecution resulted from a custom, policy, or failure to train on the part of the Department.  He has failed to identify even a single arrest, outside of his own, much less another arrest that is remotely constitutionally suspect.  His complaint contained only the most conclusory allegations that his purported constitutional injuries occurred as a result of the Department's customs and policies or, in the alternative, its failure to train its employees.  Labels and conclusions are insufficient to state a claim for relief.  *See Fin. Sec. Assurance, Inc.*, 500 F.3d at 1282.

Even were we somehow to infer the existence of a constitutionally problematic custom, policy, or failure to train and—further—determine that Leon County was responsible for the actions of Chatham County, Georgia's officers, we would still find Martin's false arrest and malicious prosecution claims unavailing. He has failed to allege facts demonstrating that any officer—from Leon or

Chatham County—acted without probable cause. *See Brown*, 608 F.3d at 734; *Wood*, 323 F.3d at 882.

For probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1119 (11th Cir. 1992). This means that "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995) (internal quotation marks omitted). "Probable cause requires more than mere suspicion, but does not require convincing proof." *Bailey,* 956 F.2d at 1120. In determining whether probable cause to arrest exists, an arresting officer must conduct a reasonable investigation. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

The officers had probable cause to arrest Martin.[9] Deputy Monroe received a call from Keaton indicating that Martin was mismanaging the funds in the Trust. Martin alleged no facts indicating that Monroe or any other law enforcement officer had reason to doubt the validity of Keaton's allegations. Absent any such

---

[9] Martin contends that the officers lacked probable cause to arrest him because a magistrate judge issued the warrant for his arrest without first conducting an adversary hearing. But an adversary hearing is "not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing." *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975).

facts, we have no trouble concluding that Keaton's call would have caused a prudent officer to believe that Martin had committed a crime. Though further investigation may have uncovered evidence exonerating Martin, probable cause does not require law enforcement officials to "take every conceivable step at whatever cost, to eliminate the possibility of convicting an innocent person." *Id.* at 1436 (alterations and internal quotation marks omitted). In other words, there is no need for officers to "investigate independently every claim of innocence." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Indeed, we have previously found the statements of a single witness sufficient to establish probable cause to arrest a suspect. *See Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002). Moreover, the mere fact that Martin was "never convicted or even prosecuted for . . . any [crime] stemming from the arrest" does not alter this conclusion. *Id.* Martin has therefore failed to state a claim for malicious prosecution.

## 2. Authority to Arrest

Martin also contends that his arrest, even if supported by probable cause, violated the Fourth Amendment because the APSA stripped law enforcement of jurisdiction to effectuate arrests for elder abuse, neglect, and exploitation without first contacting an investigator from the DCF. Martin interprets the APSA as prohibiting law enforcement from conducting any investigation into allegations of elder abuse unless and until a DCF investigator has conducted an initial

investigation.  We conclude that these allegations also fail to state a claim upon which relief could be granted.

Even were we to agree with Martin that Leon County sheriff officers acted improperly by initiating an investigation of Martin without first contacting the DCF, we would still have no basis to reverse the district court's dismissal of his claim.[10]  "There is no federal right not to be arrested in violation of state law. While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983."  *Knight*, 300 F.3d at 1276 (citations omitted); *accord Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1191 (11th Cir. 2004) ("[I]n general, allegations that local officials failed to comply with state laws are not federal constitutional claims.").  Thus, even if Leon County sheriff officers violated the APSA by acting outside their jurisdiction in investigating the exploitation of Martin's mother, that violation of state law does not itself violate the Fourth Amendment.[11]

---

[10] Although we need not interpret this state statute to resolve this appeal and therefore refrain from doing so, we doubt that Martin's interpretation of the APSA is correct.  The APSA does vest the DCA with authority to investigate elder abuse.  *See, e.g.*, Fla. Stat. § 415.104. These investigations, however, do not appear to concern the "inflict[ion of] criminal sanctions" but rather "deal primarily with the provision of *protective* services to elderly persons and the remedies available when neglect, abuse, or exploitation occur, including enjoining contact with the elderly person, requiring an accounting of funds, etc."  *Cuda v. State*, 639 So. 2d 22, 24 (Fla. 1994) (emphasis added).  Thus, given that the APSA appears to imbue the DCF with no prerogative to conduct *criminal* investigations of elder abuse, we find it extremely unlikely that its provisions divest law enforcement agencies of that same authority.

[11] Other circuits have recognized a narrow exception to this general rule for arrests made outside of a state's territorial limits.  *See, e.g.*, *Felton v. Hodges*, 374 F.2d 337, 339 (5th Cir.

**B. APSA Claim**

Martin's final contention is that he is entitled to civil damages under the APSA because Leon County sheriff officers failed to notify the DCF of the suspected exploitation of Mary Martin.  The APSA states that a law enforcement officer "who knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited shall immediately report such knowledge or suspicion" to the DCF, Fla. Stat. § 415.1034(a), and that a law enforcement official who knowingly and willfully fails to report a case of known or suspected abuse may be subject to criminal penalties, *id.* § 415.111(1).  But the APSA provides no civil remedy for violation of this provision.  *Mora v. S. Broward Hosp. Dist.*, 710 So. 2d 633, 633 (Fla. Dist. Ct. App. 1998) ("[A] violation of the reporting requirement . . . does not result in a civil cause of action."); *see also* Fla. Stat. § 415.1111 (explaining the circumstances under which a civil action may be brought pursuant to the APSA).

Under the APSA, a vulnerable adult who has been "abused, neglected, or exploited" has a private cause of action against the perpetrator of the abuse.  Fla. Stat. § 415.1111.  Such an action may also be brought by the vulnerable adult's guardian or authorized representative on behalf of the vulnerable adult.  *Id.*

1967) ("[N]o state is at liberty to abridge the rights of persons not subject to its jurisdiction by indiscriminate arrests effected beyond its territorial limits . . . ."); *see also Ross v. Neff*, 905 F.2d 1349, 1352-53 (10th Cir. 1990).   As Martin never contends that Leon County officers acted outside of Florida's territorial jurisdiction, these cases have no relevance to his claims.

14

Martin was not entitled to civil damages under the APSA.  Liberally construing his amended complaint, Martin alleged only that Leon County sheriff officers violated the APSA by failing to notify the DCF of the suspected exploitation of Martin's mother.  The APSA, however, does not provide Martin with a civil remedy for the officers' failure to report, *Mora*, 710 So. 2d at 633, and we will not imply a cause of action under the APSA where Florida's courts and legislature have declined to do so.

Furthermore, the APSA provides Martin with no cause of action for any exploitation his mother may have suffered.  It provides a cause of action only to an exploited vulnerable adult against the "perpetrator" of the abuse.  *Mora*, 710 So. 2d at 634 (detailing that the APSA is only intended to subject "actual perpetrators of abuse to civil penalties"); *see also*, Fla. Stat. § 415.1111.  Martin does not allege that any of the Department's officers abused or exploited his elderly mother.  On the contrary, in this case, the only allegations of elderly exploitation were leveled against Martin himself.  What's more, although Martin correctly points out that the APSA allows for the guardian or other authorized representative of a vulnerable adult to bring a civil action on behalf of the vulnerable adult, *see* Fla. Stat. § 415.1111, Martin seeks not to recover damages on behalf of his mother, but rather, to recover damages on his own behalf.  Accordingly, the district court did not err by dismissing Martin's APSA claims.

15

## III.    CONCLUSION

Upon review of the record and consideration of the parties' briefs, we conclude that Martin's complaint has failed to state a claim upon which relief can be granted.  We therefore affirm the district court.

**AFFIRMED.**